Case No. 18-762 et al. Henry Williams et al. Opposed to the Islamic Republic of Iran et al. Case No. 18-768 et al. Benjamin Asmar Sheikh as a spouse of Murad Mahmoud Sheikh, an employee of the United States government or an employee of the contractors of the United States government et al. Opposed to the Ministry of the Interior of the Republic of Sudan et al. Case No. 18-7122. Rita Bethe Bathiard on her own behalf and as a personal representative of the United States of America Bathiard et al. Opposed to the Islamic Republic of Iran et al. Good morning, Your Honor. Good morning. And may it please the Court. My name is Stephen Schneebaum. I appear here this morning on behalf of the Malouf and Salazar appellants, both of them families of men who were murdered in terrorist attacks on the United States Embassy in Beirut. With me on the briefs is Cynthia McCann. And because of the way we've divided up the presentations, Your Honors, as the Court is aware, I will be addressing the statute of limitations arguments first. But, of course, we reserve and preserve our position that these cases were, in fact, timely filed and my colleagues, Mr. Ellegarten and Mr. Shachar, will argue that issue subsequently. Your Honors, we start from the proposition that under the Fine Sovereign Immunities Act, under, in particular, Section 1605A.A.2, cases shall be heard by the District Court if certain prerequisites are met, and those prerequisites were, in fact, met by the cases before this Court this morning. That statute provides no discretion to decline to hear cases that otherwise qualify. And, of course, this Court has held, in the case of Fonds against Sudan, that the provisions of the statute of limitations internal to the Foreign Sovereign Immunities Act are not jurisdictional. The notion that the statute of limitations is an affirmative defense is well enshrined, of course, in Rule 8 of the Federal Rules of Civil Procedure, and it is well enshrined in what has come to be called the principle of party presentation, which the Supreme Court described in Arizona v. California as basic to our system of adjudication, and in the United States v. Burke, Justice Scalia said it distinguishes our adversary system of justice from the inquisitorial one. And that means, in the context of the Foreign Sovereign Immunities Act, that if a State defendant fails to raise an affirmative defense, that defense is waived. And that is what happened here. Iran... Well, it's forfeited. I don't know if it's waived. It is forfeited. It is forfeited. It is gone. It is not available to the defendant, at least, to raise. And the question, of course, before the Court now is whether it is open to the Court to raise that defense. Right. And so we know from the Supreme Court's decisions in Wood and Day that, at least in some situations, even though a statute of limitations defense is something that the defendant, and in that situation it was a State, can raise and can forfeit by not raising, a Court still has authority to raise the statute of limitations defense on its own. Well, there have been, of course, cases on which the court appointed amicus relies, like Day, for example, in which the court has found a discretion to invoke or to raise statute of limitations defenses, or other affirmative defenses, actually, not statute of limitations ones, but other ones, that have been passed on, not asserted by the defendants themselves. However, in all of the cases on which amicus relies, the issue was a specific one concerning the relations between State and Federal judicial systems in the context of Federal review of habeas corpus petitions brought by State defendants. We submit that there is no basis to create a similar general exception to the rule of affirmative defenses, the rule of party presentation, in a situation like this, for several reasons. First of all, because Section 82 of the Foreign Sovereign Immunities Act says that cases shall be heard. Second, because the Foreign Sovereign Immunities Act already provides a way for courts to determine whether evidence satisfactory to the court has been presented for review in a case against a foreign sovereign. That provision already protects against the possibility of frivolous litigation, of extended litigation, of litigation. How does that work? Because one of the things the Supreme Court, in its cases on forfeiture or sua sponte consideration, has directed us to consider is the rights of others, not the parties to the action, including institutional implications. So considering that here, one question that I have is how do the district courts test the legitimacy of a claim of, let's say, a relative of a deceased individual? Does the United States have information about the identities of everyone who was working for it and killed? And then is there a requirement that government documents show the relationship? How does one verify those? Well, my understanding is, Your Honor, that in cases that have proceeded to judgment in the court below, individual plaintiffs have come forward, generally before a special master, and have proved by evidence, competent evidence, that they were, in fact, the relatives that they claimed to be, that their decedent, in fact, died in the way or was injured in the way that they claimed that he or she was, and that they suffered the injuries that would justify an award of damages. And can you tell us any more about the nature of those determinations? Is it very lengthy and very subtle? Is it relatively clear-cut? It could be lengthy and subtle in a case where there was some complication about the identity of the individual plaintiff. But in the very large group of plaintiffs who received judgments in the cases reported as Doe v. Iran in the district court, hundreds of people were awarded damages based on their demonstration that, as I said, they were, in fact, the relatives that they claimed they were, they were injured in the way that they claimed they had been, and that they suffered damages as a consequence, either economic or emotional damages as a consequence. So there is a way, there is a method for testing the seriousness, if you like, the credibility of cases brought under the Foreign Sovereign Immunities Act. It does not require, nor does it even admit, nor does it invite the court, sua sponte, to raise the question of limitations. Why not? Why doesn't, because if you can look under, I think 1608E is the provision you're talking about. Under 1608E, it seems to me one potential reading of 1608E is that the court has a responsibility to screen, to make sure it's an action that has enough behind it that it's appropriate to enter a default judgment. And one consideration it could take into account in making that determination is whether there's enough on a statute of limitations. Well, the first part of Your Honor's proposition just now, of course, is unexceptionable. Yes, the court is tasked with the job of evaluating the quality of the evidence. But to impose a rule, as Judge Bates appears to have done in our case, to impose a rule that says as long as this case was brought outside the limitation period, I will exercise my discretion to toss it out, is essentially to create not a discretionary function on the part of the court, but rather an open and shut, yes or no, up or down rule. And we submit that that is the functional equivalent of concluding that. It wouldn't have to be up or down, because I guess I want to suggest a different distinction than the one you're drawing, just to get your ratchet to it in one second. But it wouldn't necessarily suggest up or down, because you could read it to say, 1608A means that there's a screening function that all district courts have to undertake when they're met with this kind of action. Yes. So that even if the defendant doesn't show up, it's still not enough just to go ahead and enter a default judgment without thought. There has to be some thought given to whether there's enough here that justifies the entry of a default judgment. That could cut across a range of issues, including, say, statute of limits. If it's an open and shut case on statute of limits, 1608A would put a bar on it. If there's some dispute, just like with anything else, if there's some reason to think it's at least colorable but not a slam dunk, then 1608A wouldn't stop the entry of a default judgment. That's one way to think about it. So I'm not sure that 1608A is foreign to a determination on statute of limits, or at least including statute of limits within the can of things that a district court could take into account, but for the following. Here's a different distinction, and I just would like to get your reaction to it, which is that the cases like Wood and Day that involve a district court or a trial court, or even a court of appeals, sui fonte noting a limitations issue, are ones in which the defendant is actually present. This case is one in which the defendant is absent. And so what about a line that draws a line, not between statute of limitations and other issues, but a line between circumstances in which the defendant is there and circumstances in which the defendant is never there? Because when the circumstance in which the defendant is never there, you don't know whether the defendant wants to assert statute of limits. The defendant, of course, can waive it if it wants to. We know from Wood and Day that if the defendant does waive it, then sui fonte can't be raised. So the line would be between circumstances in which the defendant is on the scene and circumstances in which the defendant has voluntarily decided that they don't want to be a part of the proceeding. And in that situation, the argument would go, if the defendant's not on the scene, it's inappropriate to sui fonte raise an affirmative defense on behalf of a party who's not present to raise it on its own. But when a defendant is on the scene, as with Wood and Day and Owens, the defendant's there and is telling the court what it wants to do, although albeit doing it late. What do you think about that line instead of the one that it seems like you were drawing? I am already over time. But I suspect, Your Honor, that in this situation, not only has Iran not defended itself in this case, although it has defended itself in other matters not related to terrorism, it knows where the courthouse is, it knows how to retain counsel in Washington, D.C. when it chooses to do so. So were the court to conclude that in a situation where the defendant is entirely absent, the statute of limitations should not be raised on his or her or its behalf, but in a case where the defendant comes forward and explains its reason, proffers a reason for its late response or its untimely response, then it would presumably be appropriate for the court to hear that reason and to evaluate it along with the other contentions that the defendant might make. My time has expired. Thank you, Your Honor. Thank you, counsel. Good morning, Your Honors. May it please the court. Derek Schafer from Quinn Emanuel here on behalf of the appellants generally, but in particular, the King Law and the Schafer plaintiffs. Your Honors, I'll endeavor to reserve, if I may, three-and-a-half minutes on the sua sponte question that Mr. Schneebaum was just addressing. Let me start, Judge Srinivasan, with the distinction that you were suggesting, because I think it aligns with the one that my colleague was suggesting as well, in the sense that I don't read 1608E very respectfully as encompassing affirmative defenses generally. I think it's different to say that the court is screening a primotasia case to see if there are liabilities, if there are damages, the sorts of things that Judge Blard was talking about. But as to the statute of limitations affirmative defense in particular, to your question, that is the easiest one to know is not properly analyzed under 1608E. The reason why we know from this court and from the Congress that this is not meant to be a jurisdictional statute of limitations. It's not serving that function, neither is it a statute proposed. This is something that can be forfeited, can be waived. And when you have a defaulting party like Iran that has remained altogether absent, the purposes served by a statute of limitations simply do not obtain. Iran is not offering any evidence whatsoever. I think I agree with your distinction vis-à-vis 1608E between what the plaintiff is supposed to raise and what the defendant can raise. It's not a home run on the text because the text still talks about right to relief, and you could conceive of statute of limitations as going to right to relief, or you could draw the distinction that you're suggesting, which is to say that 1608E has to do with things that the plaintiff brings forward in the complaint and things that the defendant is supposed to bring forward and answer just are off the table for 1608E. Do you buy the premise that a statute of limitation goes to right to relief? I don't buy that. I mean, that's a critical point. A statute of limitation has nothing to do with relief. It's not a matter of quality of proof. Judge Edwards, you say it perfectly. The Supreme Court is – I read the Supreme Court as having said that, essentially, that absent extraordinary circumstances, unless we have a jurisdictional statute of limitations, perhaps a statute proposed, it does not go to right of relief. We know that because it's waivable, because it can be forfeited. And you don't think it goes to claimant, establishes its claim, either? I don't think such a treatment is possible because we know a category of cases where – we know from Wood that if I ran Waives – and I'll make my respectful submission that I ran his Waive here – but then it does not have any bearing. In fact, we know by definition a district court would be abusing its discretion or court of appeals to evoke it sua sponte. So I don't think it goes to right in that fundamental sense. If Congress wanted a different result, it can make the statute of limitations jurisdictional. Yeah, I'm not – Go ahead. Follow-up. Just a follow-up. I'm not sure the text dictates a conclusion one way or the other. I'm not sure – I'm definitely not sure it forecloses the understanding that you're suggesting. I guess I'm not 100 percent sure it dictates it either, but – I think it's a better reading when you look at it against the backdrop of the laws from the Supreme Court on down addressing the statute of limitations, the traditional statute of limitations like we have here, and especially when you consider the purposes of the statute of limitations, which is to protect a defendant against failed claims so that they can have the proper proof. That is totally out of the picture when I ran it not off my main proof whatsoever. Well, in the law of the circuit, the reliance on statute of limitations is an affirmative defense and is waived if a party does not raise it in a silent fashion. Now, I say this because I wrote it, but it is the law of the circuit. It is the law of the circuit. So there's got to be some exceptional circumstance. I don't see habeas as doing it. There's got to be some exceptional circumstance to walk around the law of the circuit, which is unrefuted as far as I can tell. We totally agree with that, Judge Edwards, and I would just underline the point that the statute of limitations in particular is not serving its purpose, Judge Feene of Austin, when you have a totally absent defendant. Right. Who's not been circumscribed, who's not offering any proof, much less scale free. So then I think once 1608E, if 1608E doesn't compel a district court to consider statute of limitations because textually what it's talking about is things that are incumbent on the plaintiff to bring to the table rather than for the defendant to bring to the table, then we're back to what do we do in the absence of 1608E, forcing a district court to look at it. And as to that, one could draw a distinction between cases in which the defendant is present and cases in which the defendant is absent. And that makes perfect sense, and I think it makes special sense for the statute of limitations, given the other purposes of the statute of limitations not being served. So are you claiming that district courts lack the authority as a legal matter, or are you claiming that the discernment of what circumstances are extraordinary and the Supreme Court's line of cases is within their discretion, or do we make a categorical determination for extraordinary circumstances? Our respectful submission is the district court does not have discretion in this circumstance to raise the statute of limitations. In this category? I mean, it has discretion in some of the cases. I don't think as to the statute of limitations, and certainly not when you have an absent defendant. I mean, in like habeas cases. It is different. Courts know courts. Courts know comedy is between state and federal bases. Decisions reflect in policy in international comedy that are categorically reserved for the political branch. I get the substance of it, but I'm just trying to get the really formal way that you're articulating the standard. Exceptional circumstances is a determination that we make on a categorical basis about whether in a subcategory of cases like FSIA cases where the defendant has defaulted or FSIA cases in general versus habeas cases versus land rights cases, whatever, that we make the exceptional circumstances determination categorically, and then if we find exceptional circumstances, then it may be within the discretion of the district court, the individual. I agree with that formulation. I think the general rule is that a district court has no discretion to raise the statute of limitations to its blockade. And if the rule is otherwise judgeable, then the door is going to swing both ways. And in every case where a defendant has forfeited a statute of limitations, it will be open to that defendant to argue that a district court abuses its discretion by declining nonetheless to give it the benefit of the doubt. So think about Owens, for example. In Owens, Sudan's present, absent, present, absent, present, or something like that, and then it ends up being present. And the court of appeals, our court decided that we would take into consideration at least two non-jurisdictional arguments that were forfeited. Yes. Not the statute of limitations. Not the statute of limitations. But the statute of limitations is different in that case because there, Sudan's argument was that it's jurisdictional. It wasn't the only argument, Judge Funabosumi. If you look at Sudan's brief, particularly page 59, also made the argument in the alternative that essentially what Your Honor was suggesting, that even if the statute of limitations is not jurisdictional, it goes to sufficiency of the complaint. I looked at their brief. I didn't see that, but I'll take another look. Page 59, and then also in reply. But regardless of what they argued, the way the court resolved it was on the ground that it's non-jurisdictional. And as I read the court's decision, the court said it's non-jurisdictional, therefore we're not going to go on. Now, it's not apparent to me in a case in which the defendant is present, as Sudan was in Owens, why one would draw a divide between the forfeited arguments that we chose to take up, like whether the statute supports punitive damages and statute of limitations. Well, punitive damages, I think, is an easy one because it goes, I think, to affirmative relief. The affirmative relief in the form of damages, liability and damages, certainly are subject to testing. I think the court was acknowledging that much by taking up that aspect of Sudan's argument. But I think, Judge Funabosumi, if this court thought that there were the opening that Judge Bates had suggested, or the district courts had suggested in this case, I think it would have gone further in Owens to specifically address the statute of limitations arguments actively made by Sudan to the extent that there was an abuse of discretion by the court in not taking cognizance of it. Well, and Mr. Schaffer, there's the distinction that we recognize in Owens itself, in footnote 7, that the statute of limitations is an affirmative defense. And under rules 8 and 12, every defense to a claim for relief must be asserted, as opposed to measuring the scope of punitive damages, measuring the nature of the basis for the claim for relief. So isn't that a distinction you'd rely on? We agree, and Judge Edwards makes a point. That, I think, is consistent with the law of the circuit and the law of the land. And one final point about this, as my time draws short, to the extent that there is any discretion, Judge Pollard, in any category of cases, to be raising the statute of limitations to its fonte, it should be for the reason that courts traditionally do, and it's within their competence, to say there's no good faith claim here. There's no colorable claim. One looking at the face of this would know that it is grossly unlawful. The thing about the affirmative defense rationale, I mean, the reason why I come back to absent party is that we know, at least in some situations, even if a defendant has forfeited a statute of limitations defense and then comes on the scene later and asserts it, the court can sue a fonte, raise it on their behalf, and then take it into account. We know that. In certain limited categories of cases, I think it's the habeas case. Right. So at least there's no ironclad rule across the board that says because it's an affirmative defense, if it's forfeited, there's no authority to sue a fonte to raise it. There's no categorical rule. I would respectfully characterize it as a categorical and limited exception, one that is limited to the very special context of habeas cases where Congress, of course, has imposed very stringent limitations to protect this balance between federal and state courts. And courts know courts, but courts don't know comedy, courts don't know foreign policy, and I think very respectfully, a district court goes out of its lane. What if the United States comes in a case and says, even though the statute of limitations has been forfeited, we still think that you ought to recognize it? A tougher case, I would submit, is not this case, but I think you would need to have it from the Congress, Judge Green of Austin, because Congress, even if the United States comes in, then we have an executive stamp of approval on a comedy concern. You do, and I think that would make for a better argument for this report that our friends from the amicus would make, but I think Congress, when it deliberately legislates as it did here, and tries to make it more expensive and friendlier, and specifically has a non-jurisdictional statute of limitations that is understood the way that Judge Edwards articulated it and the way that this court, Detective Clark notes, articulated it in Owens, I think it would not be up to the United States, essentially, to invoke a forfeited statute of limitations defense, at least not in an extraordinary circumstance. And certainly what should not happen is that a district... Why is that? It seems like an extraordinary circumstance that the United States comes in and says, we have a foreign policy concern. You ought to vindicate the statute of limitations in the statute. It would be more extraordinary than what we have here, as Your Honor knows. It happens in some cases. It did not happen here, and I think it makes it an easier case, on this question of whether the district court had discretion to raise the statute of limitations. Thank you. Thank you. Thank you, Your Honor, and may it please the Court. My name is Marcella Coburn. On behalf of the court appointed amicus, I'll be addressing the sui sante issue. On a powering view, a district court can never raise a forfeited statute of limitations defense in an FFIA case, even in a circumstance where the claim is extremely untimely, where the plaintiff concedes that their claim is untimely, where the plaintiff has no reason for why their claim was untimely, and when there are extraordinarily complicated factual issues. That could lead to what the district court in this case called the potential for nearly endless litigation. How do you deal with the fact that when it's in the discretionary hands of the district courts, we end up with really functionally identical cases, and one district judge in discretion decides to raise it, another doesn't? If the decision is discretionary, I do think there's a possibility for some sort of similarly situated plaintiff being treated differently. That's just a fact of discretion. But that's not to say that this court can't identify and explain factors that the district courts would have to apply if they do decide to exercise their discretion. What about a defendant who doesn't show up at all, as Judge Srinivasan is positing? In that case, on the side of authority, whether the district court has authority to raise this at all, I still think that in FFIA cases where it's really the exception rather than the rule, at least in terrorism exception cases, that a foreign sovereign defendant appears, you have a situation where in these kinds of cases the statute of limitations is essentially a nullity. It never gets applied. And that's really different than ordinary civil litigation, where I don't think you have a category of cases where a statute of limitations that Congress did pass, even knowing that there's a... But it only doesn't get applied because the defendant doesn't show up. I mean, it's an oddity, because the statute of limitations is for the defendant to raise or not. The defendant can affirmatively decide to waive it, as we know. And in that situation, the court can't nonetheless say, I know you want to waive it, but I'm not letting you waive it. That can't happen. But then in a situation in which the defendant doesn't even show up, we don't even know whether the defendant wants to waive it. And it's theirs to raise. So it seems odd to say that in that circumstance the court, at least there's an arguable oddity in saying that in that circumstance, a court nonetheless should note it, assume that the defendant wants to raise it, not have an opportunity to have a dialogue with the defendant to make sure that the defendant cares about it, because the defendant isn't in court. I think that is true in an ordinary civil litigation, where the district court's role really is to see what the parties want to do and try the case that the parties are raising. But here, where we do have Section 1608E, which does give the district court some role in looking more closely into these cases, and where you do have a statute of limitations, and where the consequences... So as to 1608E, what's wrong with the distinction that was being suggested earlier between a screening function that's predicated on items as to which the plaintiff has to come forward with proof and a screening function that then reaches out to embrace considerations as to which the defendant is supposed to come forward with proof because the burden is on the defendant to raise or not raise the statute of limitations? 1608E doesn't clearly say it one way or the other. And I think Congress's silence in that case cuts both ways, in the sense that Congress also didn't clearly say that the district court had to look at the statute of limitations or could look at the statute of limitations in the habeas context. So I... But here, Congress could have, and Congress was looking at this issue of timeliness, and it could have, instead of saying, you know, could have said time bars jurisdictional, it could have said, sort of an intermediate position, the plaintiff has to proffer at least evidence that it's kind of timely. That's probably open to Congress to have done it. It didn't do that. That's true, Your Honor. And that's true, again, in the habeas context also. And in this case, too, even when Congress was passing Section 1608E, when it knew there could be default judgments in these cases, it still does have a statute of limitations that exists. And so if the court were to say, under absolutely no circumstances, does the district court have authority under the FSIA in terrorism exception cases, which, with few exceptions, the foreign sovereign defendants aren't hearing, the burden of that rule and the total inability of district courts to raise the statute of limitations to this point falls on district courts, and it also falls potentially on third parties that may not be before the court. And that's different than ordinary cases. You talked about the fund. How does that work in the sense of is money being dispersed as we go along? Are we waiting until the sunset and then it's dispersed? You talked about the interplay among the claims of those who filed timely and those who didn't. Yes, Your Honor. There's a little bit of both. The fund has done two disbursements so far, one at the beginning of 2017, that encompassed people who brought judgments to the court up until the middle or end of 2016. That disbursement gave about, I think, around 13%. The second one was at the beginning of this year in 2019, which encompassed claims brought between 2016 and 2018, plus some of the people from the first round who were eligible for a second round payment. That gave the judgment holders about 4%. So because of the pro-rata nature of the fund and because there are a lot of very large judgments, the plaintiffs who go to the fund, there will be an effect on other plaintiffs who go to the fund. Are there meaningful opportunities to assess the evidence about somebody coming in who was, you know, a national of some country who was working for an embassy and their heirs are seeking? What is the nature of the evidence that they bring in? Is it reliable? Are there distinctions that a district judge sitting here in D.C. can make between claims that really seem pie-in-the-sky and claims that seem substantial? Because the district court is looking at the facts under 1608E, and I think depending on the evidence that they are able to bring forward, whether it's affidavits or whether the court has a hearing, whether they're certified government documents or government documents, 1608E does give the district court some flexibility in what counts as satisfactory evidence toward it. So there is an opportunity for the district court to look at that. But as I was saying, in the case where the district court has no authority to raise an affirmative defense sui fonte, where there's extremely complex factual questions, where it's a really, really hard case, and where the claim might be untimely by a matter of decades. What are some examples? What are you thinking of when you say extremely complex factual questions? Sort of what you were talking about, Your Honor. If the claim is very old and it's the evidence of the person being a plaintiff who can bring a claim under the statute, their employment as a U.S. contractor, their placement at the embassy at the time, and it's not just the kinds of cases that we have here. Just to be clear, even in that situation, if the defendant shows up and waives, the court has no choice but to get to the complicated issue. That's right. If the defendant shows up affirmatively, deliberately relinquishes that affirmative defense, that's correct, Your Honor. We just don't know when the defendant's not there. And I think because we don't know, that's why it's a forfeiture and it's not a waiver. Even in cases where the foreign sovereign defendant defaults, because there's no evidence of intent, we can't call it a waiver. So that's why it's a forfeiture. And that's why the district court could have the authority to do that. If it were a waiver, then it wouldn't have that authority. I just don't understand what you're saying. You're starting with this notion that it would be horrible to somehow tear back the district court's authority. What authority? We're talking about, first of all, the law of the circuit is pretty clear. I'm not going to use the word waiver, even though I think it's a mistaken use of the word waiver. But it's using the word waiver along with forfeiture to make it clear. This is a really firm notion. Statute of limitations, not raised, is gone. And so the district court is not sitting there crying that I've just lost something. The district court doesn't have anything. And then there really is the well-respected notion in our country that the parties try their cases. And no one is preventing Iran from coming in, like Sudan, coming in and saying whatever they have to say about statute of limitations. They didn't do it. And so it's kind of hard for me to feel sad in this situation. And I don't see the 1608B respectfully. I don't see it. It's not there. When you start with the baseline that if you don't raise statute of limitations, it's gone. The district court's not in play. And we don't let district courts try cases in this country. That's not their job. Your Honor, on the waiver point, I think there is essentially waiver and forfeiture are the same in the ordinary civil litigation because of the party presentation principle. Because if a defendant shows up and doesn't raise their affirmative defense, it is essentially the same as a waiver because of the party presentation principle. But in specific kinds of cases, like the habeas cases, with a res judicata affirmative defense, and we argue like the cases here, that rule is different. The court in the habeas case talks about it's a cabin situation because there's institutional interest. There's no institutional interest here where the court, first of all, the fund is not something the district court, that's your argument. That's not the district court's rationale. So I don't know how it's even before us, the draining of the fund. But in the habeas case, it's a very limited situation where the court is talking about institutional interest that are in play. There's no institutional interest here in play. It's just like the case that the district court judge relies on involving stare decisis, race judicata. It's totally the opposite. The situation the court says is we've already decided this. So in that situation, we'll step in and say we're not going to let it, we can step in on our own, maybe. We can step in on our own motion. So I mean the norm is statute of limitations not raised is gone. Whether you call it forfeiture or waiver, it's gone. I certainly agree that that's the norm. And I agree that the exception to that is narrow. The reason I think there are institutional interests in this case are in part because of section 16-08E, which envisages a sort of screening function for the district court that is really different than it is in other cases. The screening function is not lost. The district court can still look at matters of proof. This is not a matter of proof. Statute of limitations is not a matter of the quality of the evidence. And the district courts have been doing this, at least in my recollection. I think I've been on some of the cases in default situations where they've done it. The district court has looked at the quality of the evidence. That's not what statute of limitations is about. It's still best, Your Honor. We would just say that it is consistent with the kind of institutional interest and role that pertains as an APS. And you make a comedy argument, and the district court relied quite eloquently on comedy, you know, that even a sovereign that's a sponsor of terrorism is a sovereign. And there's something really important and different about that. On the other hand, didn't Congress weigh the comedy interest in enacting the terrorism exception to the foreign sovereign immunity in the act? It did, Your Honor. But there's still, I think, a background of comedy that's evidenced in Rule 1608E, for instance. Yes, but let me push you even further. The United States has not been in these cases, hasn't filed a statement of interest in these cases. There's no amicus brief from the United States in these cases. We don't have any indication. It hasn't tried to nuance its listing of these states as states not subject to terrorism as well, but only up to so far. That's right, Your Honor. But I think as a categorical matter, there is a residual comedy interest in these FSIA cases, even in the terrorism exception. And I think it's because of the fact that there is a foreign sovereign defendant. Can I ask one question? Yes. Do you know of any case in which a district court, a sua sponte, raised something that's a non-jurisdictional defense where the defendant's not there? I believe that was the case in the Quad Tilter case in the Fourth Circuit, Your Honor. Sudan was not involved in that case. And, in fact, the United States did file a brief in that case. That's because there was a constitutional question that they weighed in on. But they also filed a brief, and they said the district court had authority in a res judicata context to consider sua sponte based on res judicata. So I think Quad Tilter in the Fourth Circuit. In fact, it's quite strange. I think your opponents distinguished that as Sudan having had an opportunity. They were no more there than Iran is here. I don't believe that they were, Your Honor. Or at least I don't believe that they – I don't believe there's a meaningful difference between those two things. Is there any case that involves statute of limitations in particular that you're aware of? I'm not saying that – I mean, it's obviously an idiosyncratic thing. I'm not saying that that would be constructive. Not that I'm aware of, Your Honor. But I'm just curious to know whether you know. Not that I'm aware of, Your Honor. So if I could for a minute talk about the abuse of discretion. And I think it would be helpful for this Court if it says that there is some amount of authority that district courts have for it to identify the factors that would go to the district court's discretion. Some of those could be whether there is a colorable argument on timeliness. And on that case, I do think that the plaintiffs we have here are on a spectrum. You have the Sheik and Kenyo plaintiffs on one end who are close both in terms of time to the related action provision, which my colleague will discuss more, and also in terms of their particular argument. So that is a factor the Court could look at. It could also look at – Those are the plaintiffs who say they piggybacked on Aliganda and were in fact, for that reason, timely. Yes, Your Honor. And if I could just make one more point, Your Honor. And I would just say the Court can also look at – and it did in these cases – how far past the statute limitations the claims are. Do you have other factors you'd recommend? I don't want you not to finish your list just because of the time. In addition to how untimely the claims are and in addition to the colorable basis for a timeliness argument, the Court can also look at whether there is a reason for the untimeliness. And that's, I think, a situation where, again, the Kenyo plaintiff in particular has a reason. It wasn't before the district court initially, but they have articulated a reason. And so I think that is also a factor the district court can look at in exercising its discretion. Thank you, Your Honor. Thank you, counsel. Mr. Schaefer, we'll give you your rebuttal time. Thank you, Your Honor. Being very generous, I'll be very brief. Just to address the exchange that you had about the Fourth Circuit's decision, and I believe it was the Claude Felder case, just to underline, Judge Bullard, that was about race judicata, as my friend Ms. Coburn notes. But the airline case that was decided by the Fourth Circuit prior to that was quite categorical. The Fourth Circuit held that a statute of limitations defense, by definition, could not be raised by a district court substance. They said it was, by definition, legal error for a district court to invoke the statute of limitations, citing the same basic principles about the affirmative nature of a statute of limitations defense, one that is forfeitable, one that is waivable. And if I could make one last point about that. To the extent that it may be a slippery distinction between forfeiture versus waiver, it has import to it. I think the amicus acknowledges rightly that the Supreme Court held in Wood that it is, by definition, error for a court substance to invoke a statute of limitations defense that has been waived. For the case of Iran, which we know is a sophisticated litigant, which we know is occurring in U.S. courts, if you credit the district court's theory, and we will be addressing this momentarily, but if you credit the district court's notion that on the face of these complaints, they were untimely, I think it would follow that Iran has knowingly waived its statute of limitations defense. It knows there are other complaints. It can see that they are untimely. It is choosing not to appear in this case even as it is appearing in other U.S. courts to defend other cases. I would respectfully submit that this is a case of waiver, and the court could reverse on that basis as well. So one last question before we sit down. So as between res judicata and statute of limitations, if we take as a given that res judicata can be raised to a sponte by a district court, even when the defendant is not present, the difference, the distinction you draw between res judicata and statute of limitations in that regard has to do with the systemic interests that are protected by res judicata? Exactly that, Judge Feinbaum. Yes, I think that that is important. I also think res judicata is a very rare affirmative. It's a very rare argument that is at the core of courts. Courts' institutional interest and courts' competence. It is really at the center of them. It's about what courts have already decided. And that really does differentiate quite clearly from a statute of limitations defense. And if it was completely about courts, it would be for the court to raise and not raise as it saw fit. When we know it's an affirmative defense, the defendant can raise it. I would put it this way. On a spectrum of what courts know about and care about, res judicata is on one polar end of that. I think a statute of limitations defense that protects a particular defendant, as Judge Edwards says, that is part and parcel of what courts sit back and let parties argue or not argue as they see fit. And I think it is telling that the only cases that have been cited in which courts have sua sponte invoked any of these considerations, they're habeas cases and res judicata, and that is it. And in the Fourth Circuit's decision that's being cited in Claude Felter itself, it specifically emphasizes the res judicata defense. And if it were instead focused on international comity and foreign policy, as the district courts were here, I'd respectfully submit that really does transgress the separation of powers. Those are the considerations that are reserved for Congress, perhaps for the executive branch as well. And we know Congress bounds those considerations for itself in laying down the statute of limitations it did, which is a traditional, waivable, forfeitable, non-jurisdictional statute of limitations defense. Thank you, Your Honor. Thank you, John. Okay, we'll move on to the second set of issues. Good morning. Cliff Elgarten for the Amica-Smith Plaintiffs and all appellants. I'm going to ask you to assume the judge correctly reached the statute of limitations question and address whether 1083C3 applies at all here. And I'd urge you that whether you have to reach this issue or not, that your opinion not contain any implication that even if he would err in reaching these issues at all, that it not contain any implication that he was correct in the way he interpreted the statute of limitations in 1083C3. And that's because 1083C3 is, at bottom, a permissive provision. It is intended to provide relief from a different section of the act having nothing to do with 1605AB. It expands the ability of victims to bring related actions. It does not constrict it in any way, and we're going to know that from the language. So let me begin on common ground. It can't be somewhere in between. It expands with limits. It expands with some built-in conditions. A new group of people can come in, claims that previously might have been thought to be barred, but you've got to do this linking bridge 60 days. And the answer to that question is no, because it is not addressing 1605AB at all. It is addressing a separate provision, which is the six-month statute of limitations that was newly put into this act. So let me explain where we are on common ground with the appointed amicus. The section we're dealing with in 1605AB expanded the rights of certain people to bring actions under 1605A, under the terrorism section. Who were those people? They were the people who had worked side-by-side with injured citizens in those terrorist incidents and were injured and killed in those incidents. And for the first time, Congress allowed them to bring the same kinds of actions that their brethren had previously brought, the people with whom they had worked side-by-side and had been allowed to go forward under the prior law. They had not been. And appointed amicus, and we agree on the basic proposition here, that 1605AB, not 1083C3, 1605AB was a way for otherwise time-barred plaintiffs, particularly plaintiffs who did not have a private right of action until 2008, to file suit if a related action had been timely filed under the prior law. That's what it says. It says nothing more. It contains no condition. It contains no restriction. It contains no limitation. It cites no defined terms. The important point here is that it was addressed to a different issue, 1083C3, not 1605AB. Why? Because Congress had created a new form of statute of limitations, a surprising form, which was a six-month limit on who could bring actions if the terrorist state had taken itself off the list. Can I just add one thing? So under your interpretation of the statute, I understand the six-month point about the state taking itself off the list. Yes. Under your interpretation of the way these provisions interact, even if you're talking about a plaintiff who could have brought the claim before, so not the new set of plaintiffs, you know, military officers, but suppose it's somebody who could have brought the claim before. They just didn't for whatever reason. And then the new statute's enacted. It would apply to them as one of the reasons, and I'll tell you three. And they would have no limitations period for them. They could bring it forever. I disagree that it's a no limitation provision, but no limitations under 1605AB. And the reason is because, and listen, I don't like relying on legislative history, but we don't need to because this statute tells us the answer. There were people who were dissuaded and pushed out of court, and one of the things Congress was doing, for example, was correcting the problem with people who had been thrown out of court prematurely under narrow interpretations because there were lots of problems, as some judges on this Court might remember, with the previous statute of limitations. Among others, there was the Vine case that comes up to this Court in the form of Simon. You reverse. Cases were being thrown out, and people were dissuaded from bringing cases. So, yes, they created an exemption that was broad enough to reach them. And then they could bring the, there's no statute of limits that applies to them? No, the six-month statute of limitations does apply. Why? Because we have in front of this Court 22 cases from Libya. I've taken this off the Foreign Claims Settlement Commission website, involving 11 incidents. There's no statute of limitations that applies to them unless the state takes itself off the list? That would be true. And I think the Court should not treat that as something that is disturbing, and I'll give you three reasons why that's true. One is they created an incentivized statute of limitations, which is the six-month statute of limitations. The second is, as this Court knows from Austria v. Altman, your preconceptions or our preconceptions about what is correct under a statute of limitations don't really apply, just like the rule against retroactivity doesn't apply in the sovereign immunity field. There's no principle. These cases, no matter how you did it, were being brought 35 years after the statute of limitations had been, after the events at issue. That was permitted. Is there a big difference between 35 years and 40 years? I don't think so. I think Congress very specifically wanted to correct the errors. No, but under the old regime, it was 35 years, but there was still a 10-year cap. No, there was. But under the prior regime, there was. Yes, there was a limitation, but remember, it always reached back to when the cause of action, when the incidents took place. So there was always 35 years at stake. And on international law, that is frequently the case where we do that. So Congress was not being sympathetic to that issue. It was facing, and the reason it put 1083C3 in here is because Libya had been taken off the list in 2006, and we had 22 cases that were pending. So the related action wouldn't work for that group of cases, and those 11 incidents at stake. And we had the Iraq cases, and we know that was a focus. We know there were at least a half a dozen Iraq cases, big ones. People had been dissuaded from bringing those cases, and they wanted to create a means. So those people, Iraq had been taken off the list in 2004, so they had created this related action provision in 1605 A.D., no limits. But how do you make it available to Iraq and Libya? Because they are barred by the six-month provision, and so you need 1083C3 that does that. And what does 1083C3 say? It creates no prohibition. It doesn't have prohibitory language at all. Every statute that creates a bar has prohibitory language. The immediately preceding section, C2, says you may only bring the action if, only if. There is no prohibitory language in this statute of limits, in this C3 provision at all. It's a permissive provision that allows you to go around the six months. And how do we know that? Because it's specifically cross-referenced as an exception to the six months. And you could look at all of your statutes of limitations, Federal Rule of Appellate Procedure 3, Federal Rule of Appellate Procedure 4. You may only bring an action within these, within 30 days. You must file within 30 days. It just creates an odd inequality between the cases that are pending under 1083C3, where they have to be brought only, you know, they only timely commence if the actions commence not later than the later 60 days between the entry of judgment of the original action or the date of the action of the statute. You've got a much tighter time frame. No, you don't, because the six-month statute of limitations. But that's only if somebody's been delisted, the six months. The six-month only, yes, but that's what when, look, there was only Iran, Iraq, and Libya. There were 22 Libya cases. There were six Iraq cases pending. You could read about that in your Vine and Simon decision, and the Supreme Court takes that up in Beatty. Those cases were very real and very present to the mind. You know, Congress, the President vetoed this act because of its application to Iraq cases. These are all meant to create that. So it didn't care about holding Iran subject to it. It did care about creating an exception to the six-month rule. And every prohibitory section contains a negative, 28 U.S.C. 2101. The action must be filed. The action of an appeal shall be taken. No appeal shall be brought before court unless all actions are forever barred under 2501 unless filed within six years. No action shall be maintained under 1605A7, the prior section, unless it was filed. But there are no words of prohibition here. There are two permissive statutes of limitations. The prohibitory section are the background ones. Under the state law claims, state law would be subject to a state law cause of action unless you fall within either of these two permissions, 1605AB or 1083C3. And for the federal, we would have a barring statute of limitations for causes of action that are created by federal statute. Four years shall be forever barred if not brought. But these create exemptions. You can actually look at that illustration under 2401. Backing way up, you're arguing that 1083C3 doesn't also apply to the actions that are not expressly limited by 1605AB. 1083C3 is completely independent. Independent, you're saying. Independent, independent. So it doesn't apply to an action that wasn't pending on the date of the enactment, in your view. As we understand it, the exemption was to preserve the Libya. Very specifically, it works by applying this to preserve the Libya and Iraq cases that were in this court and would not have been able to take advantage of it. We're just trying to understand the function of 1083C3B under your reading. So we have a limitation saying that it has to be brought no later than the later 60 days after the date of entry of judgment in the original action, on which the new action is piggybacking, or within 60 days of the date of enactment of this act. And unless this applies to cases that were not pending as of the enactment of the law in 2008, to cases that were terminated before, then B doesn't have any function. No, B absolutely, because it's not an exemption from 1605AB. It created a limited exception from the six-month provision where it is specifically for the record. I thought your answer was going to be different, because I thought – I understand what Judge Pillar is saying, because if it only applies to pending cases, then the date of the enactment of this act turns out to be irrelevant, because A kicks in, because the date of the entry of judgment, which hasn't yet happened, would be the one that has force. But that wouldn't necessarily be true if the date of the entry of the judgment in the original action has to do with the judgment of the district court and if the case is pending on appeal. It only – well, if you look back to what the Iraq and Libya cases really were about, that's how it really would work, because it would actually save every single one of those cases. Because what was going on in those cases at the time of the enactment of the act? Yes, those cases were actually more recently brought typically and were ongoing. Ongoing where? In which court? Usually in this court. Actually, three of the cases were before this court in the Simon case, Simon Beatty. That included Sayan. So you would have already been past 60 days of the date of the entry of judgment in the district court. But you had 60 days from the date of the enactment of the act, and that was the saving ratio. That's how it worked. So they were trying to create the exemption from the six-month provision, which is where it's specifically cross-referenced. It does not cross-reference. It is not cross-referenced at all as a limitation on 1605 AD. So what it functions as is a way for the cases that would be barred by the six-month to take advantage of the broad related case provision that allows this broad filing, which you call unlimited. But it's only for that narrow class of people who were victims. It's not an open-ended thing. It was only for those victims who actually did not bring and their brothers and sisters had brought actions before from those incidents. Are you making the same arguments that you made in the Smith brief? Yes, I am. It sounds different to me. Every word is. Then I understood your argument. You know, I noticed that, that it didn't sound that way because we don't start with what it's we start with what 1605 AD said, and then we focused on how you should read it and what and comparing the language. What we should have said, what does 1083C3 do? It's in the brief. It's in the middle of the brief. What does 1083C3 do? It serves exactly as intended as an exemption from the six-month provision, which allows 1605 AD to function for the Libya and Iraq people. And if you look at the lack of mandatory language, that's what's really the crucial part. Because if it had said only, there would be a prohibition. But instead, unlike every statute of limitations I've seen, which create a bar, this is a permission that operates against the background prohibitory statutes of limitations that are found elsewhere. State law or 1628 U.S.C. 1658. That's the proposition. It is certainly in the briefs. Did I explain it better today? I always try to explain things differently, but then we have it in the briefs. Thank you, counsel. Thank you, Your Honor. May it please the court. Erica Hashimoto is a court-appointed amicus on the 60-day limitations provision. Section 1083 C.3 is most plausibly read to explain how the related action provision in Section 1605 AD, what the content of that related action is, and what constitutes a related action. As a result, the 60-day limitations period applies to all cases filed as related to an earlier action filed under Section 1605 A.7, the predecessor statute. The cross-reference in the provision that addresses the states that have been removed from the state-sponsored terrorism list, which is what I understand Mr. Elgarten has been arguing, that cross-reference is necessary in that particular subsection, because that section is not about statute of limitations at all. 1605 AD did not need a cross-reference, because it uses the term related action and then needs to explain in the note what a related action is. As Mr. Elgarten responded to your question, he said that once a case has been filed as an original action, unless under 1605 A.7, unless a state is removed from the state-sponsored list, there is no statute of limitations at all. It completely eliminates the statute of limitations. Had Congress intended to do that, it would have been more clear in doing so. So can I ask you this? So there is that, which one might suppose is somewhat odd that there's not a statute of limitations at all within the compass of 1605 A.7. It's not an expansive one, but it's a real one. But then under your interpretation, there's a different issue, which some might say is odd, which is that even for new plaintiffs who to that point couldn't bring an action, so the statute's intended to expand the field of plaintiffs, including state service members or others who weren't within the class of plaintiffs who could bring an action before, they only have 60 days from the date of the enactment of the act to bring their action. Or 60 days from the entry of judgment in a related action that was filed under Section 1605 A.7. Right, but for a 60 – yes. But for a case that's been done – That's correct. For a case that's done, you only have 60 days. That's correct, and it is – That does not seem like much time for an effort by Congress to intentionally expand the field of individuals that can bring a claim, even as to actions that are done, and to say, hey, you were part of the same terrorist incident that gave rise to a right to recovery. We now realize that you also should have an ability to bring a claim based on that incident, based on your own injuries. And by the way, you've got two months to do it from the date of enactment, and if you don't do it, then you're done. It does seem like a very short provision. I think Congress was trying to transition from – because there are probably likely going to be terrorist incidents moving forward, and so those plaintiffs will have the 10 years from whenever the cause of action arose. For the very old 1983-1984 cases, the 60-day window feels short, but there's also equitable tolling that may apply, and so even – Do you think the statute actually eliminated the equitable toll – the reference to equitable tolling? The statute eliminated the specific reference to equitable tolling that had been in the predecessor statute, and that was because Congress put in the April 24, 1996 alternative trigger for the statute of limitations. But in general, the plaintiffs are correct that equitable tolling, unless Congress expresses an intent to have that not apply, generally does apply. And from this statute, it appears that equitable tolling still would apply. And so if, for instance, a plaintiff had a reason that they could not make it in within that 60 days, then that would be subject to equitable tolling. It's very odd, because not only are these people who Congress is reaching out to include within the coverage of this terrorist assumption, the class of people who are now being included are non-U.S. nationals. So we're giving a 60-day time period for people who live all over the world. And many of them may be sort of lower-level workers, people who did service work, security work, you know, cafeteria work in these buildings that were blown up. And it does seem like a – where the regular statute of limitations is 10 years, to have 60 days. Striking. It does feel very short, yes. And there's no, unfortunately, explanation from Congress about why 60 days. So say more, why not Mr. Elgarten's description? Why not his theory about it? For two reasons, I think, Your Honor. The first is that, as I mentioned earlier, that would completely eliminate the statute of limitations altogether, any time a previous action had been timely filed under Section 160587. So 50 years from now, a family member could come in and say, my relative was injured, and – Although we have a finite class of people, there are X number of people who worked in the building, who were injured. Should the – is it plausible that Congress's intention was, we want all of them to have relief? Some of them may come in later. The likelihood is going to be declining. But, sure. It is plausible, but the other factor is that there's no explanation in 1605 AD of what a related action is. The definition of related action on which the plaintiffs rely, which is a case arising out of the same terrorist incident, comes from the note. There's no other explanation of what Congress meant by related action, unless you read Section 1083C3 in conjunction with 1605 AD. And once you read Section 1605 AD in conjunction with 1083C3, that 60-day limitation period is part of 1083C3. And so, in plaintiff's brief, they rely very heavily on the definition of – or the explanation of what a related action is in 1083C3. Without that, they have no way of – Congress didn't say what it meant by related action. And so, I think the more plausible view is that Congress put the related action provision in Section 1605 AD to explain the – You could still have a regime in which, even if the provisions aren't linked in the way that you say they are, and they're linked in the way the plaintiffs say they are, that the related action understanding from the one informs the way you would understand related action in the other. That could still work. It just – so you wouldn't necessarily need it to do a definition. You would just say there are two different contexts in which related action arises. One of them we gave some elaboration of what it means, and the other one we didn't. But you ought to look to the second one, since they came up in the context of the same statute. Especially if you've got subsets. You're assuming the same – so you can have related action with respect to a different subset. That would be different. I mean, that's the way the statute appears to read. You're assuming related action lies across the board, and they aren't subsets. It seems to me the new statute, it's a transitional provision that really is thinking about a subset of cases, and it looks to be beneficial, not restrictive. I mean, I'm perplexed, too, by the argument from the district court that this is going to restrict potential plaintiffs. That makes no sense in light of congressional purpose. I don't disagree that this is a transitional provision. I think that's right. I think what it was intended to do, though, was to transition the plaintiffs who did not have a right of action before the NDAA was passed, the non-citizen government employees and military members, and to provide them with a very narrow window within which they could file their claim as a related action. I don't read it to give all of these or anybody else a broad right to eliminate the statute of limitations altogether, just because an earlier case was timely filed under Section 1605-87. Unless there are any further questions, thank you very much. Thank you. That will be brief, I hope. Every other part of this transitional section expands the rights. It expands the rights of people to bring actions, including those who are pending, allows cases, takes away registered et cetera. That's what all of these sections do. There's no definitional provision in here. But, you know, there would be a further irony here where we have Congress has expanded the rights and desire to create a cause of action and desire to take away the statute of limitations. The prior statute of limitations with its equitable tolling provision is construed by this court, and Simon had it applied. These folks would have had ten years to bring an action because the immunity was not lifted for until 2008. And they would have had ten years. Their reading is they now have either 60 days or, if it only applies to pending cases, no time at all to bring an action. So if Congress was supposedly expanding the statute of limitations, why would it take away the ten years that they would have had and substitute either 60 days or, if it only applies to pending cases, zero? You're speaking loosely that they would have had ten years. I mean, they would have needed legislation comparable to the original. Yes, if they had left the prior statute of limitations in place. That's correct. Ann said we're applying that to the new enactment date. Yes, if they had not substituted one. But we all know that they were victim-oriented. This was for victims, so that makes no sense in addition. Can I ask one question, which is, if for a 1605A action that only arises in the future, suppose, regrettably, there's a terrorist incident in the future that gives rise to an action, then under your reading, under everyone's reading, I think, this transitional notion is out of the picture because it's not a 1605A7 action by definition. It's only a 1605A action. Yes, it must have previously been filed as a 1605A7 action. So this is not specified. So let's take that out of play. Then let's imagine a situation in which there's a future 1605A action. Yes. As to that, there's a statute of limitations embedded in the statute. Yes, 1605A7. And a related action for that would be subject to the... Can't come into play. The related action provision is only related to previously filed actions under 1605A7, and we'll have no further thing, no further result. Congress was victim-oriented here and used the note not to create a trapdoor after granting a right under 1605A. The note doesn't create a trapdoor. Aha, we gave you the right in 1605A, and we're taking it away in the note. Congress did exactly the opposite. It used the note, the transitional section, as it frequently does, to mitigate the effects of certain of these new harsh provisions of the statute on the rights of people who had relied on a prior version. Right. So there's a 10-year statute of limitations for this future case, and once the first plaintiff sues about that incident, everybody else can come in whenever. That's the theory, right? Not in the future. Yes. Not in the future. I thought that was your reading of 1605A, because an action may be brought if it's commenced, or a related action was commenced, or a related action under 1605. So wait, there's no related actions in the future? That's exactly right. That's exactly right. And what's the explanation for that, that there's a related action? Because they're giving you the 10-year statute of limitations, and on a prospective basis, there's no injury to mitigate. Congress created this related action provision because this court, for good reason, had issued a number of narrowing rulings under the prior statute, both going to the statute of limitations reversed in the Simon case and in other ways. And it said, look, a lot of people didn't bring their actions because we wrote a bad statute. I'm going to give you a chance to join the people who filed before, but only if they filed before. It's a very narrow group of people who were injured side-by-side with the people who had brought actions before, and that's what these exceptions refer to. But on a going forward basis, anybody who's injured side-by-side is still subject to the same statute of limitations. Because they all clearly have the claim. So it's just saying, now that you're all in, now that we've waived programming, now that we've done it clearly, you're all in and you're all limited by 10 years. And we all start afresh. We've fixed the problem from the past. We're going to start afresh now. I see my time is up. Thank you. We'll move on to the third set of issues. Thank you once again, Your Honors. To argue the remaining reasons why we respectfully submit that the claims in question were timely, let me start with what I think is common ground, and I would submit, if Your Honors don't take the first two grounds for reversal that have been offered by our side, here's what I think is the easiest remaining one. And it really is equitable tolling. And let me start, Your Honors, with the very clear presumption that if Congress enacts the statute of limitations and says nothing more, equitable tolling applies. The Supreme Court has held that in the Irwin case. This court has followed that teaching in, among other cases, the Nominee Indian Tribe of Wisconsin versus the United States. You can find it at 614 F3rd and 519. I would direct Your Honors to cases 529 and 530. And what the court basically said, following what this court said, following the Supreme Court's teachings, is even if there are some suggestions, some negative implications that equitable tolling might not apply, it is a very strong presumption that it does. Not a rebuttal, but Congress has to be explicit that there's not to be equitable tolling. So is this the argument that was raised, wasn't raised until the 1590 motion? No, Your Honor. That'll come last. Okay. This is as to all. All of the foreign nationals. Oh, this is not limited to him. Prior to 1605 A, they didn't have a cause of action. To the extent they had a cause of action, there was foreign sovereign immunity that would have effectively posed an insuperable bar to their prevailing against the state sponsor of terror. That's clear. And that was clear in 1605 F, combined with relevant provisions in 1605 A, which basically said a court shall decline to hear any suit that was brought by a foreign national, even if they were serving for the United States, and even if they otherwise had a cause of action. So in that circumstance, where the claim literally could not be successfully brought, it's a classic instance for equitable tolling. And the presumption from the U.S. Supreme Court and from this court are very clear that when you look at a statute like 1605 A, you read equitable tolling into it. And it only makes sense for the reason you were indicating, Judge Pillard. And I note that although 1605 F previously had explicitly provided for equitable tolling, that meant Congress essentially was not relying upon the presumption. What Congress did was struck that entire statute. It started afresh with 1605 A. So it offers statutory silence from Congress as to equitable tolling. And it clearly falls right within the teeth. Have the equitable tolling, the presence of that explicit equitable tolling, caused any problems, any expressio unias for other background doctrines or anything? I don't see how it could because the whole statute, the whole predecessor statute went away. No, no, but had it. I'm just trying to think why Congress would have. Well, we'll clean that one up if they really wanted to carry it over. Well, perhaps they weren't thinking about it at all because the courts have been so clear that if Congress doesn't do anything more, it's naturally understood to incorporate the common law surrounding statute's limitations and all exceptions to it. And that's true, Judge Pillard, even to take the Menominee Tribe instance, there the statute explicitly exempted claims for fraud. Those were not subject to the statute of limitations. So the argument came, the implication is equitable tolling implicitly does not apply there. And this court rejected that, saying that's not how the presumption works. And the Supreme Court in the Irwin case has specifically said, look, there may be nuances of language that differentiate different statute of limitations. Sometimes they'll be clearer. They'll be more mandatory. And the Supreme Court said, we're getting rid of all that, that parsing. We're just going to presume across the board that equitable tolling applies unless Congress tells us not to. I think it's telling that the amicus recognizes that this is an instance where, assuming that they disagree with us as to the argument you just heard from Mr. Ellegarten, that, of course, equitable tolling has obtained here. And a prototypical instance for equitable tolling is where the defendant was immune up until the time that 1605 capital A was enacted. That's when the clock starts. That's how equitable tolling works according to the recent instruction from the Supreme Court in the Ardis case, decided last term, a case against D.C., in fact, where the Supreme Court analyzed traditional equitable tolling and said the clock starts when you first have a claim. And it follows from that that the enactment of 1605A in 2008 began the 10-year clock. If there was any doubt about that, and I don't think that there is under canons of construction and settled law, Senator Blattenberg, the proponent of the statute, that that was going to be a 10-year statute of limitations going forward for this whole category of plaintiffs, the foreign nationals who previously had not been able to sue. You can get there by saying the cause of action doesn't arise until 1605A is enacted, or you can get there through equitable tolling. But one way or another, we respectfully submit, that is the correct conclusion, that there were 10 years following the enactment of 1605A to bring these claims, and that makes all the claims essentially timely. You've been presenting it a little differently from, I think, how it was presented in your brief, which says that the cause of action arose as of 2008, which... I would say... We read the brief. If you read the brief, Judge Edwards, you have to read all the way through, but I swear that one argument comes after the other. We make both arguments. The first argument... We're flipping the order, I think. We're flipping it because I've come to the conclusion, Judge Edwards, I think this is the easier way to decide the case, and I think the amicus recognizes that, too. We argue that equitable tolling applies, and we argue... Maybe the other way to put it is the other way is harder for you. Well, fair enough. Fair enough. I think it follows. I think it follows. You could also get there under the prior 1605F. That's one other point, Judge Pillard. For 1605F, as it had existed prior to the enactment of 1605A in 2008, there's no question that it provided, as you note, for equitable tolling. And if you read how 1605A works, it is providing a cause of action. It is providing rules that govern a cause of action for anyone wronged by a state sponsor of care. That encompasses foreign nationals. The statute from 1605A says something else, which is that courts are inclined to hear the claims from that category of people. Do you cite Menominee? I'm sorry. No, we did not cite Menominee. I'm sorry. We cite Irwin. We cite Irwin, and I think we cite it with an asterisk because this court provides for it. But Irwin is a seminal Supreme Court case. I was citing Menominee for the reason that was reflected in our colleague. I think it shows just how strongly the presumption is applied by this court, I think correctly, following from Irwin. And I also heard from the amicus the recognition that equitable tolling does apply under 1605A. I think that that concession is correct, and I think it is dispositive. The reason I was saying, as night follows day, you get equitable tolling as a plaintiff who could not possibly have sued because the defendant was immune, and the 10-year clock starts then in 2008, just as I think Congress envisioned. If I may make two more points because my time grows short here. One, we think Owens is a related action, and there's no question that both the Shake and the Quinoa suits were filed within 60 days of the final judgment in Owens. The only way that Judge Bates got to the opposite conclusion was by saying there are different claims in the Owens case, and the claims of the intervenors that were subject to a separate judgment, those should be essentially parsed out as not having been brought under the prior 1605A, and that is unsupported by any authority that any party has been able to cite. That sort of parsing of an action, a singular action, to say that there are different claims that are the touchstones, and Congress specifically used the word related action, didn't say related claims, and once the action is the touchstone, I think it follows from settled law that these plaintiffs are on the correct side of that because the final judgment in Owens, undisputedly, was within 60 days of the date when those two suits were filed. And if Your Honors were to disagree with all of that, and I had nothing else left, I would offer to you the respectful submission that in these extraordinary circumstances where a stash of limitations is being raised sui sponte on behalf of a state sponsor of terror that's not even appearing before the court, the Kenewa plaintiffs at least deserve to be heard on the merits, and this is what Your Honor was asking about, as to their specific special facts that explain why they filed suit when they did. There are unconcredited affidavits that they had an understanding that they were participants in an action that was filed and resulted in a successful recovery, and unbeknownst to them, as they reside in Kenya, they had been omitted inexplicably as plaintiffs from that action, contrary to the understanding they had from their mother or their close family member whom they had been relying upon. In those circumstances, we submit they should have been heard from on the merits, and I can explain to Your Honors why procedurally I think they arrived at the place that they did when the argument had not been raised until after Judge Bates had entered the judgment he had on behalf of her. Okay. Thank you, Counsel. Thank you, Mayor. Please, the court. Erica Hashimoto. The, as the court did, I think, I read the argument of the plaintiffs, both below and in their opening brief, to be that the cause of action arose only when they gained the right to sue, that Congress intended the word cause of action arose to mean that that's when their claims arose. As I now understand their argument, they are arguing that they were entitled, as a matter of law, to equitable tolling during the period when they did not have a right to sue. I don't disagree that a district court could have equitably tolled the statute of limitations for the period when plaintiffs did not have a right to sue, but none of the plaintiffs raised that before Judge Bates, and so I think bringing it out in the reply brief is a little bit late for that. And as to if it were before us, you don't have any reason to think that it wouldn't succeed. I guess I'm just, you know, I hear your arguments about how it may not have been preserved, or it might be something that needs more factual record. I think because equitable tolling in general is a factual determination, I think in the first instance the district court would have to make that determination and get the record and understand from the plaintiffs all of their arguments that the statute of limitations was equitably tolled until January 28, 2008, when Congress passed the NDAA. Your argument is that when a party fails to raise an argument in a timely way, it's forfeited, right? It is forfeited, Your Honor, that is a true statement. No exceptions, gone, right? Gone, we leave it to the parties, right? It is not raised, Your Honor, so they could raise it if this court believes that it needs further factual development. It's backing off a little bit, huh? It is forfeited, definitely. And as to the Aliganga issue, I do think that the Shake and Quinoa plaintiffs have the strongest argument that their claims were timely, and going back to what the district court should have done. Because of Owens? Because of Owens, that's correct. And there's no case law on this because the related action provision is not an ordinary provision for statute of limitations. And so whether an intervener's action constitutes a related action for purposes of this statute is just entirely unclear. And it just seems, I mean, once you're an intervener, you are a party under the federal rules. So I appreciate that you have an uphill battle. Your best shot on that is just this is a very sui generis situation. The district judge who is managing the litigation side really is, too, and therefore we take his judgment on that? Yes, I think that's right. And the one other thing is that because of the way this statute is written, the related action has to have been filed under 1605a7. And although the Owens complaint was filed under 1605a7, by the time the Aliganga plaintiffs intervened, 1605a7 no longer existed. But the Aliganga plaintiffs intervened in the pending action, which was an action under a7. So they were able successfully to join an action under a7, and that's the action. That's right, but their intervener complaint that they filed was filed under 1605a, the new statute, rather than under 1605a7. Again, I think the district court could have come out either way on this. And as I mentioned, I think this is probably something that the district court could consider if it has the authority to consider statute of limitations sua sante. How clear is it that the actions were untimely? And because the Sheikh and Quinoa plaintiffs have the best argument that their claims were timely filed, it's very likely that they probably do need a remand if this court concludes that the district court has the authority to raise the statute of limitations sua sante to consider both equitable tolling and the fact that their claims really were much closer than any of the others. If the court has no further questions, we'd ask the court to affirm. Thank you. Thank you, counsel. Let me just address procedure for the court, just that. And let me start with Judge Bates's decisions and questions. If you look at pages 61 and 62 of the appendix, Judge Bates, in ruling that the claims were untimely as to Sudan, specifically stated his judgment that they were never tolled. And you can find that on the carryover from pages 61 and 62 of the appendix. And in doing that, you may recall, he was quite emphatic on page 66 of the appendix in saying that although there was to be supplemental briefing, it was limited to the question whether Iran was equally entitled to this statute of limitations defense that he had already held was resulting in a judgment for Sudan. Sudan, to take his language, they may not use the opportunity to relitigate the court's interpretation of section 1605A-B, governing timeliness, but rather only to argue that the court's decision to dismiss the claims against Sudan did not lead it to likewise dismiss the claims against Iran. Given that treatment and the emphatic instruction that was there, I think it would be begrudging to say that we failed to raise the equitable tolling argument adequately for his consideration. He had effectively rejected the notion that there could be any equitable tolling. So before this court, in arguing for reversal in our opening brief, we did rely upon equitable tolling. You can find it in pages 48 and 49 of the shape brief. And we did it by citing 1605F, saying that that is the provision that had been in place up until the enactment of 1605A, dictated traditional equitable tolling, which would mean that the 10-year clock didn't begin until 2008. The amicus' rejoinder to that, in their responsive brief, was to say, well, 1605F didn't apply to non-U.S. nationalists. And that's where, just to recite the Irwin case to say, even the new 1605A incorporates equitable tolling as to the new category of plaintiffs it's opening the doors to. And my other respectful submission that I admit was not in our reply, but I think is part and parcel of that, is that you can reach the same result under prior 1605F. Because if you read the relevant subcommissions of 1605, the predecessor statute, it was clear that the cause of action and the rules of counting and the equitable tolling, those apply to any state sponsor of terror and any action that they may take that may result in claims. It simply rules out the foreign nationalists by saying, a court shall decline to hear. So I think there's equitable tolling both ways. So you're pointing me to A61 to 62 as addressing a tolling argument. What I see there is addressing an argument that the claims arose when the act was passed and rejecting that, no? Well, I think it's the line where he says, and was never told thereafter. And the reason that he's reaching that conclusion, as I understood Judge Bates' decision, is really the point that you were making, Judge Floyd, that before that, on page 61, there is no second sentence in section 1605AB tolling the clock during the period of immunity. So he was rejecting the notion as a matter of law, and I think the amicus acknowledges this, that equitable tolling could apply. We respectfully challenge that on this appeal. We say equitable tolling must apply under subtle presumptions and also under the prior language of 1605F, which I think does the same rules apply. The same equitable tolling to that point applies to the claims by foreign nationals, albeit their claims were due to be declined to be heard by a district court. That's the relevant language. So I think that there is common ground that equitable tolling does apply here, and my only respectful disagreement with the amicus is I don't see any occasion for a remand, because once equitable tolling applies, it applies as a matter of law for foreign nationals who could not possibly have successfully sued the foreign sovereign up until 1605A was enacted in 2008. I think that that dictates essentially a reversal and a judgment in favor of the relevant clause. Thank you, Your Honors. Thank you, counsels. Thank you, counsels. The cases submitted, Ms. Hashimoto and Ms. Coburn, you were appointed by the court to support the district court's judgments, and the court thanks you and your teams for your able assistance in these matters. Thank you.
judges: Srinivasan, Pillard, Edwards